UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BUDGET BLINDS, INC.,** | MISC #: 05-CV-388 (WJM) |
| Plaintiff, | |
| v. | OPINION |
| **VALERIE WHITE, BUDGET BLINDS OF NJ, INC., VAL U BLINDS, INC.,** | HON. WILLIAM J. MARTINI |
| Defendants. | |

Martin G. Gilbert
Stryker, Tams & Dill, LLP
Two Penn Plaza East
Newark, NJ 07105

(*Counsel for Plaintiff*)

Ronald J. Nelson
Washington Valley Office Park
161 Washington Office Road
Suite 207
Warren, NJ 07059

(*Counsel for Defendants*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendants move under Rule 60(b)(4) to vacate a default judgment of the District Court for the Central District of California for lack of personal jurisdiction. The Court finds that any connection Defendants had to the State of California was too attenuated to constitute the minimal contact the California court would have needed to constitutionally

assert personal jurisdiction over Defendants. Accordingly, the Court **GRANTS** Defendants' motion to vacate and **VACATES** the California court's default judgment.

I.   FACTS AND PROCEEDINGS[1]

This case arises out of a trademark dispute and subsequent settlement agreement between Plaintiff, a business incorporated and based in California, and Defendants, who collectively constitute a business incorporated and based in New Jersey.

The trademark dispute arose because Plaintiff and Defendants were using similar names for their businesses. Plaintiff, Budget Blinds, Inc. ("BBI"), is a business incorporated and based in California. Budget Blinds, Inc. v. White, Nos. 06-2610, 06-2733, 2008 WL 2875349, at *1 (3d Cir. July 28, 2008). BBI franchises mobile window covering businesses throughout the United States. Id. Defendant Valerie White operated an unrelated business incorporated and based in New Jersey called "Budget Blinds of NJ, Inc." ("BBNJ").[2] Id. BBNJ's business was the design and installation of window blinds. Id. Unlike BBI, BBNJ advertised and operated exclusively in the New Jersey region. Id. In late 2003, BBI wrote to BBNJ claiming that BBI had the exclusive trademark rights to the name "Budget Blinds" and threatening suit. Id.

BBNJ contested BBI's rights to the name "Budget Blinds," and BBI and

---

[1]The facts of this case as presented in the parties' briefs are well established, complete, and not in dispute, as the parties have now expressly represented to this Court.

[2]From 1988 until 1997 Defendant White operated this business as an unincorporated entity. Id. In 1997, Defendant White incorporated this business in New Jersey as "Budget Blinds of NJ, Inc." Id.

2

Defendants BBNJ and White eventually entered into a settlement agreement. Id. Under the agreement, BBNJ and White transferred all interests in the name "Budget Blinds" to BBI in exchange for a cash payment. Id. BBNJ and White accordingly agreed to refrain from using the name "Budget Blinds" and to change BBNJ's operating name from "Budget Blinds of NJ, Inc." to "Val U Blinds, Inc." Id. Most importantly to this litigation, the agreement required White to take steps to attempt to disassociate her business's phone number from the name "Budget Blinds" in the local New Jersey Yellow Pages phone directories, published by Verizon. Id.

While Defendants generally complied with the settlement agreement, they were unable even with reasonable diligence to prevent Verizon from disassociating Defendants' phone number with the name "Budget Blinds" in the Yellow Pages. Id. at *2. White wrote several letters to Verizon requesting this disassociation, but Verizon continued to publish Yellow Pages directories listing "Budget Blinds" next to White's phone number. Id. White and BBI attempted but were unable to reach a resolution to this problem. Id.

In response to Verizon's continued listing of the name "Budget Blinds" next to Defendant' phone number, BBI filed a complaint against White, Val U Blinds, and BBNJ in the District Court for the Central District of California. Id. at *3. BBI asserted two types of claims: (1) claims related to Defendants' alleged trademark infringement and (2) claims related to Defendants' alleged breach of the settlement agreement. Id.

3

Defendants, in an effort to contest the California court's personal jurisdiction over them, declined to file a response. Id. Accordingly, the district judge, Judge James Selna, entered default judgment against Defendants, which BBI then attempted to enforce by registering it with this Court. Id.

Defendants now move under Federal Rule of Civil Procedure 60(b)(4) to vacate the default judgment.[3] Id. Defendants argue that the California court lacked personal jurisdiction over them. Id. Defendants reason that any connection they had with the State of California was too attenuated to constitute the minimum contact required for a California court to assert personal jurisdiction over them. Id.

## II.   DISCUSSION

The requirements of personal jurisdiction in federal courts—a sine qua non of federal adjudication—derive from two sources. First, a federal court may only assert personal jurisdiction over a litigant to the extent that the state in which that court sits would assert personal jurisdiction over that litigant. Fed. R. Civ. P. 4(k)(1). Second, constitutional due process requirements, as explicated in federal jurisprudence, further delimit the extent to which a federal court may assert personal jurisdiction over a litigant. See Int'l Shoe Co. v. Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945).

---

[3] The Court initially resolved Defendants' motion under Rule 60(b)(6), but on appeal the Third Circuit reversed, finding that rule inapplicable and remanding for a determination in this Court under Rule 60(b)(4). Budget Blinds, 2008 WL 2875349.

These two analyses merge with respect to whether a federal district court in California has personal jurisdiction over a litigant. Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). This is because California by statute has expressly extended its assertion of personal jurisdiction to the constitutional maximum and will "exercise personal jurisdiction over a non-resident defendant if . . . that exercise of jurisdiction accords with federal constitutional due process principles." Id. Accordingly, the only question in this motion is whether Judge Selna's assertion of personal jurisdiction over Defendants comported with constitutional requirements of due process.

These constitutional requirements of due process stem from one overarching principle. That principle is that the due process clause does not permit a plaintiff to haul a defendant into a forum to which the defendant has no connection. That is, due process in the personal jurisdiction context requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit [in that forum] does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Since International Shoe, federal courts have further structured the analysis of this inquiry.

In the Ninth Circuit, this constitutional inquiry comes in the form of a three-part test. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). A federal court in that circuit possesses personal jurisdiction over a nonresident defendant only if

the defendant meets all three parts of the test.  Id.  First, "[t]he nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws."  Id.  Second, "the claim must be one which arises out of or results from the defendant's forum-related activities."  Id.  Third, "exercise of jurisdiction must be reasonable."  Id.  The Court examines these three prongs in turn.

> A. **Whether Defendants Purposefully Availed Themselves of the Privilege of Conducting Activities in California**

BBI alleges two possible ways that Defendants may be said to have purposefully availed themselves of the privileges of conducting activities in California such that they must now be amenable to suit there. First, BBI argues that Defendants have purposefully availed themselves of the privilege of conducting activities in California by contracting with a California citizen, namely BBI.  Budget Blinds, 2008 WL 2875349, at *13.  Second, BBI argues that Defendants have purposefully availed themselves of the privilege of conducting activities in California by infringing upon the trademarks of a California citizen, again BBI.  Id.

> > 1. **Purposeful Availment Through the Settlement Agreement with BBI**

The Court holds that Defendants have not purposefully availed themselves of the privilege of conducting activities in California through their contracting with BBI.

6

Accordingly, such contracting cannot constitute the minimum contact necessary to have allowed the California court to assert personal jurisdiction over Defendants, as the Opinion will now explain.

Whether a contractual relationship between an in-state plaintiff and an out-of-state defendant can constitute such minimum contacts is a fact-specific inquiry. It is clear that "[t]he mere existence of a contract is insufficient to establish minimum contacts." Id. at *13. However, the contract itself is usually but one part of an overall course of conduct that includes not only the execution of the contract, but also the negotiations preceding the contract and the acts fulfilling the contract. Id.

Here, it appears that Defendants have engaged in nothing more than the absolute minimum amount of contact with California needed to contract with a California citizen. They negotiated the contract entirely from New Jersey, using mail and phone to communicate with BBI in California. Also, the contract did not require Defendants to do anything in California: they merely had to relinquish rights in intangible property and received money in return. It is difficult to imagine a contract between a California citizen and non-California citizen that involved much less contact with the State of California. If the Third Circuit's statement that "[t]he mere existence of a contract is insufficient to establish minimum contacts" is to mean anything, it must mean that contracts such as this one do not satisfy the minimum contacts requirement.

Indeed, rather than purposefully availing themselves of the benefits of conducting

activities in California, it appears that Defendants took great pains to minimize their contact with California. They remained in New Jersey during all contract negotiations. Also, they specifically objected to and excised a provision in the settlement that would have provided a California court with personal jurisdiction over them.[4]

On the whole, it is clear that Defendants intentionally avoided California when entering into the settlement agreement. By entering the settlement, Defendants did not purposefully avail themselves of the benefits of conducting activities in California. The settlement thus could not support Judge Selna's exercise of personal jurisdiction over Defendants. The Court must now examine whether Defendants' alleged trademark infringements may support such personal jurisdiction.

### 2.  Purposeful Availment Through Trademark Infringement

The Court holds that Defendants have not purposefully availed themselves of the privilege of conducting activities in California through their alleged infringements of Plaintiff's trademarks. Accordingly, such alleged infringements cannot constitute the minimum contact necessary to have allowed the California court to assert personal jurisdiction over Defendants, as the Opinion will now explain.

Where a defendant committed allegedly tortious activity outside the forum of

---

[4] Because Defendants so clearly intended to avoid personal jurisdiction in California, the Court finds it of little moment that they agreed to allow the contract to be governed by California law. See Burger King, 471 U.S. at 482 (holding that a choice-of-law provision "standing alone would be insufficient to confer jurisdiction").

litigation, a court in that forum may still assert personal jurisdiction over that defendant if the allegedly tortious activity had sufficient effects in the forum.  See Calder v. Jones, 465 U.S. 783, 789 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California.").  Federal courts in the Ninth Circuit will find such effects sufficient to support personal jurisdiction only if the defendant's allegedly tortious conduct satisfies three conditions: the defendant must have (1) committed an intentional act, (2) expressly aimed that act at the forum state, and (3) caused harm that the defendant knew was likely to be suffered in the forum state.  Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

Under the parties' essentially agreed-upon version of the facts, Defendants' alleged trademark infringement falls well short of this standard.  Most notably it is clear from the record that any of Defendants' conduct that might constitute trademark infringement was not intentional.  The alleged infringement is Defendants' failure to prevent Verizon from disassociating Defendants' phone number with Plaintiff's trademarked names.  Plaintiff does not allege or produce evidence that this failure was intentional.  Indeed, the record is clear that Defendants took at least reasonable measures to prevent this infringement (their letters to Verizon) but were unable to do so.  Because Defendants' alleged trademark infringement was not an intentional act, its effects in

California cannot serve as the basis for personal jurisdiction there.[5]

### 3. Purposeful Availment Summary

In summary, Defendants cannot be said to have purposefully availed themselves of the privilege of conducting activities in California such that they are subject to personal jurisdiction there. This alone is sufficient for the Court to grant Defendants' motion to vacate Judge Selna's decision. Nevertheless, the Court will proceed to analyze the remaining two prongs of the Panavision test. As the Opinion now explains, these two prongs reinforce the conclusion that Judge Selna lacked personal jurisdiction over Defendants.

### B. Whether Plaintiff's Cause of Action Arises Out of Defendants' Forum-Related Activities

The Court finds that Plaintiff's causes of action do not arise out of Defendants' forum-related activities. As the Third Circuit has already noted with respect to this case and the second prong of the Panavision test, "[a]lthough this is a distinct requirement, in this case the analysis is identical to the 'purposeful availment' analysis." Budget Blinds, 2008 WL 2875349, at *16. Because the first prong is satisfied, the Court finds that the second prong is satisfied as well.

### C. Whether Judge Selna's Exercise of Personal Jurisdiction Was Reasonable

---

[5]For the same reason, Defendants cannot be said to have expressly aimed their conduct at California—or anywhere else—to satisfy the second condition of the Dole test discussed above.

The Court finds that Judge Selna's exercise of personal jurisdiction was not reasonable. This further supports the Court's decision to vacate the default judgment.

The Ninth Circuit's inquiry as to whether personal jurisdiction is reasonable is a fact-intensive inquiry. Id. at *17. It involves consideration of seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Harris Rutsky & Co. Ins. Serv. v. Bell & Clements Ltd., 328 F.3d 1122, 1132 (9th Cir. 2003). For convenience, the Court will discuss these factors in three groups: (1) the first factor, (2) the third and fourth factors, and (3) the second, fifth, sixth, and seventh factors.

For the reasons discussed above, the first factor (the extent of Defendants' purposeful interjection into California's affairs) clearly favors Defendants. Defendants have barely interjected themselves into California's affairs. This factor thus weighs against personal jurisdiction.

With respect to the third and fourth factors (the extent of conflict with the sovereignty of California and California's interest in the dispute), the Court finds that these factors favor Plaintiff—but only slightly. As in any case, California has some interest in adjudicating and preventing tortious harm to its citizens. But this interest here arises from harm to only one of its citizens—which Defendants allegedly inflicted from a

foreign state.  Indeed, any harm to Plaintiff was from dilution of Plaintiff's trademarks in the New Jersey area.[6]  Any effects from this harm that Plaintiff felt were indirect and only to Plaintiff's finances in California.  Accordingly, this case implicates California's sovereignty and interest in this litigation only slightly.

With respect to the second, fifth, sixth, and seventh factors, the Court finds that they clearly favor Defendants.  These factors together address the practical considerations of litigating in Plaintiff's requested forum as opposed to an alternative forum.  Here, it appears that New Jersey is a much more desirable forum for this litigation on balance.  Plaintiff is a nationwide business with operations in New Jersey.  In contrast, Defendants are a relatively small business, which operates exclusively in New Jersey.  Litigating this case in California likely places a much greater burden on Defendants than litigating this case in New Jersey would place on Plaintiff.  Also, most of the factual events giving rise to Plaintiff's claims occurred in New Jersey, most notably Verizon's unauthorized republication of Plaintiff's trademarks and any resulting dilution of these marks.  Thus on balance, the practicalities of litigating this case favor New Jersey as a forum over California.

In summary, the aforementioned considerations confirm that Judge Selna's exercise of personal jurisdiction over Defendants was improper.

---

[6]There is no evidence in the record and Plaintiff does not contend that Defendants' alleged trademark infringement diluted Plaintiff's trademarks in California.

As a final note, the Court observes that in no way should its holding reflect poorly on Judge Selna's decision. Judge Selna's grant of Plaintiff's motion for default judgment allowed Defendants to force Plaintiff to litigate this case in New Jersey, where the case should have been brought in the first place. Had Judge Selna addressed this personal jurisdiction issue sua sponte, the analysis would have lacked the benefit of Defendants' robust opposition. Accordingly, the Court commends Judge Selna's decision.

## III.    CONCLUSION

Judge Selna lacked personal jurisdiction over Defendants. Accordingly, Defendants' motion to vacate his default judgment is **GRANTED**, and Judge Selna's default judgment is **VACATED**. An Order accompanies this Opinion.

s/William J. Martini

William J. Martini, U.S.D.J.

Dated: September 17, 2008